OPINION
{¶ 1} On June 6, 2004, Nick Mavrakis asked police officers to enter his residence and remove individuals who were not permitted to be there. Mr. Mavrakis had an ongoing problem with people using his residence as a "flophouse."
 {¶ 2} After the officers entered the residence, they discovered appellant, James Brown, with a woman in an upstairs bedroom. Near the couple were a crack pipe and a bag. Inside the bag was a cigarette pack containing pills. Appellant stated the bag belonged to him. The pills were later determined to be Oxycodone and Hydrocodone/Acetaminophen.
 {¶ 3} On July 1, 2004, the Stark County Grand Jury indicted appellant on one count of aggravated possession of drugs in violation of R.C.2925.11(A)(C)(1)(a) and one count of possession of drugs in violation of R.C. 2925.11(A)(C)(2)(a).
 {¶ 4} On July 23, 2004, appellant filed a motion to suppress any evidence seized by the officers and his statements made to them. A hearing was held on August 4, 2004. The trial court denied said motion.
 {¶ 5} A jury trial commenced on August 9, 2004. The jury found appellant guilty as charged. By judgment entry filed August 19, 2004, the trial court sentenced appellant to a total aggregate term of eleven months in prison.
 {¶ 6} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I {¶ 7} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS."
 II {¶ 8} "Appellant's conviction for aggravated possession of drugs and possession of drugs were against the manifest weight and sufficiency of the evidence."
 I {¶ 9} Appellant claims the trial court erred in denying his motion to suppress. We disagree.
 {¶ 10} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 485;State v. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v. Claytor
(1993), 85 Ohio App.3d 623; Guysinger. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S.Ct. 1657, 1663, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
 {¶ 11} The issues on suppression were whether police had permission to search the residence, whether Miranda warnings were given to appellant and whether any of appellant's statements were custodial. Appellant challenges the trial court's fact finding analysis.
 {¶ 12} In Miranda v. Arizona (1966), 384 U.S. 436, the United States Supreme Court held a suspect must be notified of his/her constitutional rights to remain silent and to have counsel present during a custodial interrogation by the police. Before the interrogation can begin, the suspect must make a knowing, intelligent, and voluntary waiver of those rights. If these procedural safeguards are not complied with, the confession may not be admitted at trial as evidence against the accused. According to Miranda at 444:
 {¶ 13} "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."
 {¶ 14} At the conclusion of the suppression hearing, the trial court concluded police had the property owner's permission to be in the residence, oral Miranda warnings were given and appellant's statements were not made in a custodial setting. T. at 22-23.
 {¶ 15} The evidence presented supports the trial court's finding that the property owner, Mr. Mavrakis, asked police officers to enter his residence and remove any unauthorized individuals who were "flopping" there. T. at 6-7. Upon investigating an upstairs bedroom, the officers found appellant and a woman on a mattress. T. at 8. In the room were a crack pipe and some Chore Boy which "goes in the crack pipe." Id. A white plastic bag was also in the room. T. at 9. Appellant admitted the bag belonged to him. T. at 9, 13. Inside the bag were two packs of cigarettes, one of which contained pills. T. at 9. Upon being asked what the pills were, appellant replied, "Vicoden and a couple other pills." T. at 10.
 {¶ 16} While appellant was being transported to the police station, he was given his Miranda rights. T. at 15. After the officers verified the pills were controlled substances, appellant was given his Miranda rights again. Id.
 {¶ 17} While still at the residence prior to his arrest, appellant admitted the bag containing the pills belonged to him. T. at 9. At the police station, appellant stated he "traded some crack cocaine for the pills." Id. This statement was made after appellant had been given hisMiranda rights. No evidence was presented to contradict these facts. Therefore, we conclude the trial court did not err in denying the motion to suppress as the decision was based upon the evidence presented.
 {¶ 18} Assignment of Error I is denied.
 II {¶ 19} Appellant claims his convictions were against the sufficiency and manifest weight of the evidence. We disagree.
 {¶ 20} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenks (1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175. See also, State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 21} Appellant was convicted of aggravated possession of drugs and possession of drugs in violation of R.C. 2925.11(A)(C)(1)(a) and (2)(a) which state as follows, respectively:
 {¶ 22} "(A) No person shall knowingly obtain, possess, or use a controlled substance.
 {¶ 23} "(C) Whoever violates division (A) of this section is guilty of one of the following:
 {¶ 24} "(1) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, and hashish, whoever violates division (A) of this section is guilty of aggravated possession of drugs. The penalty for the offense shall be determined as follows:
 {¶ 25} "(a) Except as otherwise provided in division (C)(1)(b), (c), (d), or (e) of this section, aggravated possession of drugs is a felony of the fifth degree, and division (B) of section 2929.13 of the Revised Code applies in determining whether to impose a prison term on the offender.
 {¶ 26} "(2) If the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule III, IV, or V, whoever violates division (A) of this section is guilty of possession of drugs. The penalty for the offense shall be determined as follows:
 {¶ 27} "(a) Except as otherwise provided in division (C)(2)(b), (c), or (d) of this section, possession of drugs is a misdemeanor of the third degree or, if the offender previously has been convicted of a drug abuse offense, a misdemeanor of the second degree. If the drug involved in the violation is an anabolic steroid included in schedule III and if the offense is a misdemeanor of the third degree under this division, in lieu of sentencing the offender to a term of imprisonment in a detention facility, the court may place the offender under a community control sanction, as defined in section 2929.01 of the Revised Code, that requires the offender to perform supervised community service work pursuant to division (B) of section 2951.02 of the Revised Code."
 {¶ 28} Both officers talked with Mr. Mavrakis who gave them permission to enter his residence and remove unauthorized individuals as people were "flopping" in his home. T. at 69-71, 84. They both testified to hearing appellant admit the bag containing the pills belonged to him. T. at 74, 86. At the police station, appellant admitted the pills were his. T. at 76, 87. The pills were stipulated to being controlled substances. T. at 88; State's Exhibit 2.
 {¶ 29} Appellant testified and recanted his admission that the pills were his, and claimed they belonged to the woman who was in the bedroom with him. T. at 91-92. Appellant explained he told the officers the pills belonged to him because "I didn't want them to take her to jail" as "[s]he had just got out of prison two months prior for four possession charges, and she was supposed to go see her PO the next morning to go into treatment. And had she been caught with the pills, she would have done a lot of time." T. at 92-93.
 {¶ 30} Appellant argues the jury accepted the officers' testimony that they had Mr. Mavrakis's permission to enter the residence, and the jury refused to accept his testimony that what he told police at the time of the incident was untrue.
 {¶ 31} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. The integrity of the jury process and decision making authority on facts is affirmed by Section 3, Article IV, Ohio Constitution, as "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause" on appeal. As the finders of fact, the jurors personally observed appellant and the two officers in determining credibility. Clearly the jury believed the officers' testimony and rejected appellant's recantation.
 {¶ 32} Upon review, we find sufficient credible evidence, if believed, to support the jury's verdict, and no manifest miscarriage of justice.
 {¶ 33} Assignment of Error II is denied.
 {¶ 34} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.
Farmer, J., Boggins, P.J. and Hoffman, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed.